Thomas Griffin (No. 022475)
ROBAINA & KRESIN PLLC
6017 North 15th Street
Phoenix, Arizona 85014
Telephone: (602) 682-6450
Facsimile: (602) 682-6455
ttg@robainalaw.com

Attorneys for Plaintiff Frank Venniro

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Frank Venniro,<br><br>               Plaintiff,<br><br>     vs.<br><br>J.P. Morgan Securities L.L.C.,<br><br>               Defendant. | No.<br><br>**COMPLAINT**<br><br>**(Demand for Jury Trial)** |

Plaintiff Frank Venniro ("Venniro"), for his Complaint, alleges the following against Defendant J.P. Morgan Securities L.L.C. ("Defendant" or "JPM"):

**Jurisdiction, Venue and Parties**

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e *et seq*.) ("Title VII") and 42 U.S.C. § 1981.

2. Venniro is a Caucasian male who currently resides in Arizona.

3. Defendant is a corporation authorized and doing business in Maricopa County, Arizona, and is an employer subject to the requirements of the Title VII and 42 U.S.C. § 1981.

4. Jurisdiction is specifically conferred upon the United States District Court by 28 U.S.C. §§ 1331, 1343.

5. Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391(b).

6. Venniro began his employment with JPM in or about 2001 as a Financial Advisor in New York and Venniro remained employed a JPM employee until he was terminated from JPM on or about December 6, 2019.

7. During his employment with JPM, Venniro worked in numerous positions.

8. In or about July 2006, Venniro was transferred to Arizona where he worked as a Financial Advisor.

9. Venniro was transferred again in or about January 2007 to a Market Director Investments position in Arizona.

10. After transferring back to a Financial Advisor position, also in Arizona, in or about April 2010, Venniro transferred to Nevada in or about April 2011 and became a Market Director.

11. Venniro's last transfer within JPM was in or about April 2013 when he returned to Arizona and became an Executive Director/Market Director.

12. At all relevant times, Venniro's job performance was at least satisfactory.

13. In fact, Venniro received dozens of awards from his Regional Directors and he was never disciplined.

14. Despite his undisputed success at JPM, Venniro was abruptly terminated after a disgruntled African-American former employee continued to assert baseless race related allegations against JPM and Venniro until, despite supporting Venniro when it benefited JPM, JPM decided to terminate Venniro's employment.

15. The treatment of Venniro was consistent with JPM's recent pattern of favoring non-Caucasian employees.

16. The treatment of Venniro was also retaliatory in response to Venniro's complaints that 1) JPM exhibited a pattern and practice of discriminatory actions based on race and 2) he was paid less than his similarly situated female coworkers.

17. Ricardo Peters ("Peters") was a subordinate employee of Venniro from in or about May 2016 until in or about October 2018.

18. Peters had a long history of, among other things, bending the rules and making unreasonable demands.

///

///

19. Ultimately JPM made the decision to terminate Peters and although Venniro did not make the decision, as Peters' manager, Venniro informed Peters of his termination.

20. Peters then pursued every avenue he could, both publicly and privately, to obtain a settlement from JPM.

21. First, Peters filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

22. JPM vigorously contested the allegations in the Charge and in its Position Statement to the EEOC, JPM asserted that Peters believed the rules did not apply to him, made unreasonable demands of his manager, Venniro, and that following an internal investigation, JPM determined that no discrimination or retaliation occurred.

23. Upon information and belief, Peters' Charge was dismissed without a cause finding.

24. After filing his EEOC Charge, Peters reached out to the press regarding the alleged discrimination and retaliation he endured while working at JPM, but Peters' allegations to the press were baseless.

25. As addressed in the public articles, Venniro was recorded by Peters discussing a potential client who inherited money.

26. Based on his vast experience in the industry, Venniro advised Peters that the client in question would not be a good client for investments for JPM.

27. Venniro's business decision was correct and was not questioned by JPM.

28. Further, as JPM correctly relayed to the press, Venniro knew the potential client's financial circumstances, but did not know her race.

29. Peters continuously attempted to make his termination an issue of race and JPM continuously denied that.

30. As part of JPM's denials, JPM supported Venniro on the race-based allegations.

///

31. But JPM needed a scapegoat and seized on Venniro's statements as a reason to terminate his employment and report the same to the press.

32. From in or about January 2017 until at least in or about December 2019, JPM took many steps to hire and/or promote non-Caucasian employees and continuously treated them better than their similarly situated Caucasian employees.

33. Consistent with this practice, numerous JPM supervisors, including Venniro's direct supervisor, Steve Wacker ("Wacker"), often made comments about hiring and/or promoting non-Caucasians.

34. For example, in or about March 2019, Christopher Goebel ("Goebel"), Divisional Investment Manager Greater West, called Venniro and told him to find a way to promote a specific African-American Financial Advisor, Charles Belton ("Belton"), to a Private Client Advisor because JPM needed to add a minority to that position.

35. Venniro informed Goebel that Belton was a new Financial Advisor, was not ready to become a Private Client Advisor and that promoting him would be a mistake.

36. Ultimately Goebel agreed with Venniro and did not promote Belton, but as Goebel advised Venniro, Belton was only a candidate in the first place because he is African-American.

37. In another example, in or about May 2019, after Wacker rejected an applicant because he was Caucasian, Wacker asked Venniro "Do you have any nonwhite recruits?"

38. Later that same month Wacker said, "we have 11 open ADP positions, we need to fill them with women and minorities, okay, we'll hire maybe one white guy."

39. Additionally, throughout the last couple of years, Wacker would constantly make statements that it is not to hire the best person for the job, it is to hire the minority for the job, even if they are not the best applicant or something to that effect.

///

40. Wacker made another discriminatory statement at a meeting on or about November 13, 2019 during which he introduced a new employee and stated: "we hired Ryan, the whitest guy I know, do I wish he wasn't [white], yes, but he is the right guy."

41. Venniro repeatedly told Wacker—including in or about May 2019, August 2019 and November 2019—that his actions and statements were discriminatory based on race, but Wacker continued his actions and statements.

42. Venniro also reported to Wacker—in or about August 2019—that he believed he was being discriminated against in his pay because he was paid less than the three female employees who were in the same position as him.

43. Less than a month after he last complained about race discrimination and less than four months after complaining about gender discrimination, Venniro was abruptly effectively terminated.

44. On or about December 5, 2019, Wacker informed Venniro that he could resign or be involuntarily terminated the next day.

45. Venniro knew that if he were involuntarily terminated, it would be extremely difficult to obtain a similar position in the future and was thus left with no choice but to submit a forced resignation.

46. In or about February 21, 2020, Venniro filed a Charge of Discrimination; Charge No. 540-2020-01975, with the EEOC alleging discrimination based on race and gender and retaliation based on Venniro's complaints about race and gender discrimination.

47. On or about September 25, 2020, the EEOC issued Venniro a Notice of Right to Sue for Charge No. 540-2020-01975.

48. Venniro has met all administrative prerequisites to bring this lawsuit.

### COUNT ONE

**(Retaliation in Violation of Title VII and 42 U.S.C. § 1981)**

49. Venniro incorporates by reference all previous allegations as though set forth fully herein.

50. In complaining about JPM's discriminatory treatment based on race and gender, Venniro engaged in protected activity under Title VII and 42 U.S.C. § 1981.

51. After Venniro complained about JPM's actions, JPM retaliated against Venniro by effectively terminating his employment.

52. There is a causal connection between Venniro's protected activity and the termination of his employment.

53. As a result of JPM's actions, Venniro has suffered economic damages, mental anguish, emotional distress, pain and suffering, humiliation, and harm to reputation.

54. JPM's actions were done with malice or with reckless indifference to Venniro's federally-protected rights.

## COUNT TWO

### (Discrimination in Violation of Title VII and 42 U.S.C. § 1981)

55. Venniro incorporates by reference all previous allegations as though set forth fully herein.

56. Venniro is Caucasian.

57. JPM treated Venniro less favorably than his non-Caucasian coworkers.

58. JPM's discriminatory treatment of Venniro included effectively terminating his employment after racial discrimination complaints were made by a non-Caucasian employee who was a subordinate of Venniro.

59. As a result of JPM's actions, Venniro has suffered economic damages, mental anguish, emotional distress, pain and suffering, humiliation, and harm to reputation.

60. JPM's actions were done with malice or with reckless indifference to Venniro's federally-protected rights.

///

///

///

## COUNT THREE

## (Constructive Discharge as Discrimination and Retaliation in Violation of Title VII and 42 U.S.C. § 1981)

61. Venniro incorporates by reference all previous allegations as though set forth fully herein.

62. Because of his race and complaints about JPM's discriminatory treatment based on race and gender, JPM gave Venniro the ultimatum that if he did not resign that day, he would be involuntarily terminated the next day.

63. JPM's actions made Venniro's working conditions so intolerable that a reasonable person in Venniro's shoes would have felt compelled to submit a forced resignation.

64. As a result, Venniro submitted a forced resignation.

65. There is a causal connection between Venniro's protected activity and the adverse employment action JPM subjected him to, which made Venniro's working conditions so intolerable that a reasonable person in Venniro's shoes would have felt compelled to submit a forced resignation.

66. As a result of JPM's actions, Venniro has suffered economic damages, mental anguish, emotional distress, pain and suffering, humiliation, and harm to reputation.

67. JPM's actions were done with malice or with reckless indifference to Venniro's federally-protected rights.

WHEREFORE, Plaintiff Frank Venniro respectfully requests that this Court grant judgment in his favor and against Defendant J.P. Morgan Securities L.L.C. as follows:

    A. For an award of economic damages in an amount sufficient to make Plaintiff whole for past and future lost income and benefits and other economic losses suffered by Plaintiff resulting from Defendant's conduct;

  B. For an award of compensatory damages for mental anguish, emotional distress, pain and suffering, humiliation, harm to reputation and other losses incurred by Plaintiff because of Defendant's conduct;

  C. For an award of prejudgment and post-judgment interest;

  D. For an award of punitive damages;

  E. For an award of Plaintiff's costs of suit incurred herein;

  F. For an award of attorneys' fees and related expenses pursuant to 42 U.S.C. § 2000e-5(k); and 42 U.S.C. § 1988(b); and

  G. For an award of such other legal and equitable relief as this Court deems just and proper.

DATED this 30th day of September 2020.

      ROBAINA & KRESIN PLLC

      By /s/Thomas Griffin
        Thomas Griffin
        Attorneys for Plaintiff

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial in this matter as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

      ROBAINA & KRESIN PLLC

      By /s/Thomas Griffin
        Thomas Griffin
        Attorneys for Plaintiff